HODGES *v*. WEST BLOOMFIELD TOWNSHIP.

1. HIGHWAYS AND STREETS—DEDICATION—COMPROMISE AND SETTLEMENT—DEEDS—ABANDONMENT.

Complainant's ancestor was the owner of a farm which was situated upon a portion of highway that the owner desired to have discontinued. With a number of other petitioners the owner of the property asked the commissioner of highways of the township to alter the course of the highway and pass over her land. As a part of the arrangement the owner executed a warranty deed of the new portion of the highway across her premises which was delivered to the township officials. The original line of the highway being discontinued, upon the application of certain interested proprietors an injunction was obtained against the closing of the old highway. In settlement of the litigation the owner of the property in question arranged with counsel in the case to abandon her rights to closing up the highway and that the township commissioner should abandon his claim to the new road. It had, however, been opened up and graded as proposed by the petitioners. Complainant closed up the new road and removed his fence on the south line. The public at

irregular intervals used the highway. Although the township served a notice on the complainant to remove the obstruction he failed to do so, and during the ensuing eight years defendant took no further action. The deed was not recorded until nearly 10 years after its execution. *Held*, that no dedication of the new road was intended apart from the arrangement to open the new highway and close the old one, and that complainant was entitled to treat the deed from his ancestor to the township as abrogated by the compromise and practical abandonment.

2. SAME—ADVERSE POSSESSION—OCCASIONAL USE—ABANDONMENT.
    Where the use of a new road by the public was occasional and not exclusive the claim of a right to an easement by prescription cannot be sustained.

3. SAME—EQUITY—LACHES—TOWNSHIPS.
    Where the owner of an alleged road asserted his proprietorship and removed the highway fence, claiming title to the premises and exercising acts of ownership over the disputed strip, no right was acquired by public user or prescription.

Appeal from Wayne; Smith, J., presiding. Submitted April 15, 1915. (Docket No. 106.) Decided June 7, 1915.

Bill by George Hodges against the township of Bloomfield and others to quiet title to real property. From a decree for complainant, defendants appeal. Affirmed.

*Aaron Perry* (*John H. Patterson,* of counsel), for complainant.

*Arthur R. Tripp* and *Andrew L. Moore,* for defendants West Bloomfield township and Johnson.

*Clark, Lockwood, Bryant & Klein,* for defendant Spencer.

The complainant is one of two heirs of Mariva Hodges, and as grantee of his coheir was at the time the bill of complaint was filed in this cause sole owner

of a farm in Oakland county bordering upon the north shore of Pine lake. Between said farm and the water of said lake there has existed for many years a public highway. In the spring of 1894, Mariva Hodges, desiring to convert said highway in front of her premises to a private highway, caused a petition to be presented to the commissioner of highways of the township of West Bloomfield to the following effect:

"ORCHARD LAKE, MICH., April 21, 1894.

"The undersigned freeholders in the township of West Bloomfield, Oakland county, Mich., hereby petition the commissioner of highways, of said township, in accordance with section 1296, Howell's Annotated Statutes, to alter the highway in road district 17 of said township, changing that portion of said road beginning at S. W. corner of land owned by Mrs. A. E. Morris on Pontiac gravel road, and running to boundary line between Mrs. M. Hodges and Mr. G. W. Howard when said line meets north shore of Pine lake, said road being so altered as to begin on Pontiac gravel road on land of Mrs. M. Hodges, N. W. of land owned by Mr. J. C. F. Hollister, and to run in an easterly direction along the north line of said Hollister so as to meet the unchanged part of said road district 17, at said Howard's line on north shore of Pine lake, Mrs. M. Hodges agreeing to donate land required for said road and to plow, grade and roll new road, preparatory to usual road work of said district 17.

"CHARLES DURKEE.
"W. H. BUTTS.
"ADELAIDE E. MORRIS.
"JAMES C. F. HOLLISTER.
"J. SUMNER ROGERS.
"MARIVA HODGES.
"GEORGE S. HODGES.
"EDWARD COATES."

Action was taken upon said petition, which is evidenced by the following notice:

"To MRS. MARIVA HODGES:

"Take notice. That application pursuant to law has been made to the undersigned commissioner of

highways of the township of West Bloomfield, by eight freeholders of said township to alter and lay out a part of a highway known as road district No. 17 in said township. The application is to change that part of said road beginning at S. W. corner of land owned by Mrs. A. E. Morris on Pontiac gravel road and running to boundary line between Mrs. M. Hodges and G. W. Howard where said line meets north shore of Pine lake, said road being so altered as to begin on Pontiac gravel road on land of Mrs. M. Hodges, N. W. of land owned by J. C. F. Hollister and to run in an easterly direction along north line of said Hollister so as to meet the unchanged part of said road district 17 at said Howard's line on north shore of Pine lake, Mariva Hodges agreeing to donate land required for said new road, and to plow, grade and roll new road, preparatory to usual road work of said district 17, and which highway will pass through land owned and occupied by you. You are therefore notified that the undersigned commissioner of highways will meet at the house of Mrs. Mariva Hodges in said township, on the 15th day of May, 1894, at 1 o'clock p. m. to proceed to view the premises described in said application and notice, and ascertain and determine the necessity of changing highway above described.

"Dated the 5th day of May, 1894.

"James White,
"Commissioner of Highways of the Township of West Bloomfield."

Further action is evidenced by the following record:

"State of Michigan ⎱ ss.:
"County of Oakland. ⎰

"In the matter of the opening of highway, the same being two rods wide on each side of a center line, which said center line of said highway is described as follows: Commencing at a point in the center of the Pontiac and Orchard Lake gravel road located 426 feet east and 430 feet north by 10° E. of the center of section 11, town 2 N., of range 9 E., Oakland county, Michigan; thence south 60° E. 443 feet 2 inches; thence north 83° 20' E. 1889 feet to terminal point of said new highway, or where said center line intersects the highway now running along the north shore of Pine lake, in said township.

"I, Thomas Pennell, commissioner of the township of West Bloomfield, in said county, do hereby certify that on the 24th day of May, A. D. 1895, I, as such commissioner, did accept the above-described land as a public highway.
"Dated June 5, A. D. 1895.
"THOMAS PENNELL,
"Highway Commissioner.
"Recorded by me this 18th day of June, 1895.
"A. G. NEWMAN, Clerk."

In an endeavor to carry out her part of the arrangement Mariva Hodges executed to the township a warranty deed of the new highway which ran some distance back from the shore road. This deed was delivered to the proper township officer. Thereafter obstructions were placed upon the shore line road at its intersection with the gravel road running into Pontiac by or under the direction of Mrs. Hodges, in an endeavor to close it or to limit its use to that of a private way. Opposition sprang up among the residents of the township thereafter, and finally on May 25, 1897, the commissioner of highways filed a bill in chancery against the complainant in this cause praying for an injunction restraining him from obstructing or closing up the shore line road. Complainant appeared in that case by counsel and shortly thereafter negotiations were had between counsel with the result that it was agreed that complainant should abandon any claim of a right to close up the shore line road and that the commissioner would make no claim to the "new road," which had been opened and graded by Mrs. Hodges in accordance with the proposition contained in the petition. No written stipulation was filed in the cause and no final decree was rendered therein, the preliminary injunction issued against complainant being permitted to stand. It is the testimony of the complainant that shortly after this adjustment of the controversy had been made he

closed the so-called "new road" by erecting a fence across the east and west ends thereof and one across the middle. He likewise removed the fence on the south side of the new road which he had previously erected, thus throwing the road into the adjoining fields. He further claims that from that time up to 1913, he has maintained the fences at both ends of said highway with some slight intermissions, and that he has cropped and pastured the land constituting the way. In 1905, some seven or eight years after the adjustment of the chancery suit, defendant Spencer, who had acquired the Hollister property lying next to the "new road" and south thereof, caused the township officials to place upon record the deed which Mariva Hodges had given the township of the "new road," and which had theretofore not been recorded. At about the same time the township officers served notice upon the complainant in this cause, requiring him to remove the obstructions at either end of the "new road." This notice is dated June 26, 1905. Complainant did not comply with the demand contained in the notice, and no further action was taken by the township board until 1913, when the highway commissioner, in the absence of the complainant, undertook to reopen and grade the road.

On the part of the defendant there is evidence to the effect that the general public has made use of the "new road" upon several occasions, and that the complainant has not maintained the obstructions at either end thereof continuously. On one occasion, too, the highway commissioner has caused some small improvements to be made in the road. After a full hearing in which many witnesses were sworn upon each side, the learned circuit judge, who heard the case, filed the following opinion:

"While the defendant Spencer was permitted to intervene as a party and appears to have been the mov-

ing party in procuring the recording of the deed in question, and in urging the township officers to take steps to hold the land in controversy for street purposes, it will not be necessary to consider whether or not he has the right to a special use of the west end of this alleged public highway, because this question is not included in the pleadings. Apparently he is in the case merely to assist the township and because of his especial interest financially, growing out of his purpose to plat some of his land.

"As a matter of convenience, I shall discuss this deed and the highway as if Mr. George S. Hodges was the owner of the land in 1895. His mother was a widow, he lived at home and transacted her business and was the moving party and in charge for her, of all the proceedings to change the lake shore highway and to open the new one and is the present owner of the property.

"*First.* Should the deed be set aside for failure of consideration? There can be but one answer unless Mr. Hodges has lost his day in court by long delay in asking for it. The equities are all in his favor. If allowed to stand, the township has secured a strip of land practically through the middle of this valuable farm without paying anything for it. It is an absurdity to claim he dedicated this land for public use as an independent proposition. In 1895 there was no occasion for the road and no motive for the deed except as a part of an agreement with Commissioner White. I do not understand how the township can in good conscience insist upon keeping it unless it is as a matter of punishment of Mr. Hodges for his attempt to close this valuable shore road.

"This new Hodges highway is not of overwhelming importance to the public at large, so long as the shore road is open. The business traffic of the neighborhood is chiefly north and south on the gravel road to and from Pontiac. The travel for pleasure is great in the summer months, but it is mostly along the shores of Pine and Orchard lake when it leaves the gravel road. The shore road is the better, more convenient, and more attractive for all those living east of it who wish to go south on the Orchard lake gravel road, and there are but few living east of it who have occasion to go north to Pontiac on the gravel road.

Also but few living west of it who have occasion to go east upon it. Because it is one of the most beautiful lake driveways in Michigan with an automobile clubhouse and splendid cottages, nearly all of those driving for pleasure (and in the summer, this class of travel is the great majority) will always from choice travel the shore road. There is little reason to believe the township authorities would at this time seriously consider for a moment the opening of this highway if obliged to pay the true value of the strip and its damages to the farm.

"The record shows and all the circumstances indicate that Mr. Hodges desired to live in a sort of seclusion. Then, as now, there was a very large amount of driving for pleasure between his home and the lake. It annoyed him somewhat. With a large lake frontage it was of value to him to close it. He was willing to donate this strip through the farm, back of his house and buildings for the closing of the shore road in front of them. Commissioner White, wishing to accommodate a neighbor and not fully realizing the attachment of the people for this shore driveway, assented to the arrangement and took the proceedings described in the record. There is no reason whatever for believing the deed would have been made, but for Mr. White's proceedings to close the shore road. When the closing of the shore road failed, the consideration for the deed failed. Counsel for defendant in their brief say, 'There is no competent proof of any such agreement.' I find it difficult to consider that statement seriously. It is but a technicality. At the hearing I understood one of counsel to admit as true, what one of the witnesses said, viz.: That at the time everybody understood it to be the fact. There is no question but that everybody, then living in that part of the township, did understand it by the time the injunction suit was brought to preserve the shore road.

"A long time elapsed before this suit. I think, however, it can be truthfully said in Mr. Hodges' favor that he supposed when the injunction suit was abandoned it would be the end of the township's claim under the deed. I do not think he fully understood there would, in reality, be any claim for a permanent highway until after the recording of the deed

and visit of the commissioner thereafter. It would seem as if to that time, the township officers considered the road as abandoned or of little value, else the deed would have been recorded. It is my belief that after the injunction suit, the commissioners considered it useless to record it. It is clear that it was not recorded until the order of the supervisor, after defendant Spencer had brought up the question. To invoke the law of laches seems a hardship. Its application is denied.

"*Second.* · The deed out of the way, can the township hold the land for a permanent highway by user? This, in my opinion, must be answered in the negative. Compared with the immense amount of travel along this gravel road and this Pine lake shore road, there was almost no travel. It seems that some persons traveling past its ends did not know it was open. It has at best but a limited and occasional use. It was with interruptions. It cannot be truthfully said that it was open, notorious, and exclusive. It was mostly a use by a few of the immediate residents with visits of the highway commissioners to remove barriers. Arthur Pack, who had more occasion to use it than any one living east of it, had scarcely used it at all. He seems to have understood the east end next to his home as closed, at least not for travel. I do not think the defendants can prevail. If so, it must be wholly upon technicalities. The merits are with complainant, unless as to a possible easement in favor of defendant Spencer personally, growing out of the use by Hollister and himself of a part of it at the west end, concerning which no opinion is ventured."

BROOKE, C. J. (*after stating the facts*). Much learning bearing upon questions of law is collected in the briefs of counsel for both parties. In our opinion the foregoing statement of fact renders it unnecessary to examine and review the questions discussed. No person can read the record before us without reaching the conclusion that the deed in question was given by Mariva Hodges as a part only of an entire transaction, the whole of which included the closing of the shore road as well as the opening of the "new

road." She never at any time intended to dedicate the "new road" to the public use as an independent proposition, and neither the public nor the officers representing it have understood or believed that she entertained such an intention. Following the settlement of the chancery suit which occurred about two years after the execution of the deed, for a period of about eight years there appears to have been a practical abandonment by the township authorities of any rights they might have acquired under the deed in question. The deed itself was not recorded until 1905. At that time a notice was served upon the complainant in this cause requiring him to remove the obstructions. This he did not do and for a further period of eight years the authorities remained quiescent. The formal acceptance of the deed by the township officials is not sufficient under the facts in this case to constitute an indefeasible title in the township. Following that acceptance, the chancery suit was launched by the township, and an adjustment reached by the terms of which, as evidenced by the testimony of the attorney for the township, the township agreed to abandon any claim to the strip in question. From 1907, when the chancery suit was settled, to 1913, when the township attempted to reopen the road, the complainant and his mother by their acts had at least attempted to retake possession of the strip in dispute. The claim of the township that it has acquired possession and title to the strip through use is not sustained by the evidence in the record. The use has at most been but occasional. From the time of the settlement of the chancery suit the township has never had open, notorious, and exclusive possession of the strip.

Nor do we think laches should be imputed to complainant or to Mariva Hodges. Immediately after the adjustment of the chancery cause they took possession of the property in reliance upon the terms of that ad-

justment, and during all the time that has intervened from that time to 1913 the acts of complainant and his mother in the assertion of dominion over the disputed strip have not been questioned except in 1905, when a notice was served, and in 1913, when the attempt was made on the part of the township to regain possession of the disputed strip. Asserting ownership and being in possession except for occasional and very infrequent use during the sixteen years, must be held to relieve the complainant from the imputation of laches. As soon as the township by any overt act attempted to take possession, the complainant filed his bill. This, we think, under the circumstances disclosed by this case, was seasonably done. In a court of conscience the real rights of parties should be conserved unless this is forbidden by some controlling legal principle. In the case at bar we find none such.

The decree of the court below is affirmed.

MCALVAY, KUHN, STONE, OSTRANDER, BIRD, MOORE. and STEERE, JJ., concurred.